EDGEWATER REDEVELOPMENT AU-
THORITY, a Colorado Urban Renewal
Authority, a body corporate and politic,
Petitioner,

v.

FIBREGLASS FABRICATORS, INC.,
Respondent–Appellant and
Cross–Appellee,

and

Richard L. Kylberg, Respondent–Appel-
lee and Cross–Appellant.

Nos. 87CA0290, 87CA1842 and
87CA1850.

Colorado Court of Appeals,
Div. I.

March 2, 1989.

Rehearing Denied March 30, 1989.
Certiorari Granted July 31, 1989.

Chrisman, Bynum & Johnson, P.C., Rob-
ert L. Matthews, Boulder, for Fibreglass
Fabricators, Inc.

Faegre & Benson, Joseph M. Montano,
Leslie A. Fields, Denver, for Richard L.
Kylberg.

MARQUEZ, Judge.

This appeal arises from proceedings sub-
sequent to a condemnation action initiated
by the petitioner, Edgewater Redevelop-
ment Authority (Edgewater). Fibreglass
Fabricators, Inc. (Fibreglass) appeals the
trial court's determination that it was not
entitled to participate in the condemnation
proceeds beyond the primary term of its
lease. Richard L. Kylberg (Kylberg) ap-
peals, *inter alia,* the trial court's determi-
nation that Fibreglass was entitled to par-
ticipate in any of the condemnation award.
We reverse and remand with directions.

Prior to 1982, Kylberg owned all the
outstanding stock of Fibreglass, as well as
the real property upon which Fibreglass
operated a business. In that year, two
Fibreglass employees purchased all the
stock in Fibreglass from Kylberg and con-
tinued operating the business. Kylberg re-
tained ownership of the real property upon
which the business was operated.

As part of the agreement to sell the
stock, Kylberg and Fibreglass executed a
lease agreement providing for a primary
term to expire on April 30, 1987, and grant-
ing Fibreglass the right to renew the lease
up to three times for terms of five years
each. However, Article X of the lease pro-
vided, in pertinent part:

"*10.1 Full Condemnation–Termi-
nation.* If, during the term of this
Lease Agreement, the entire Leased
Premises shall be taken as a result of the

exercise of the power of eminent domain or sold to the governmental authority in lieu of condemnation ... this Lease Agreement *shall terminate* and the rent shall be apportioned as of the date the governmental authority takes possession of the Leased Premises pursuant to such Proceeding." (emphasis added)

In April 1986, Edgewater filed a condemnation petition seeking to acquire certain property including that covered by the lease. In its answer to the condemnation petition, Fibreglass claimed that the value of its leasehold interest was at least $600,-000. Kylberg filed a motion in limine contesting Fibreglass' right to share in the condemnation proceeds. On August 20, 1986, the trial court ordered that title to the subject property be vested immediately in Edgewater. After a hearing on Kylberg's motion, the trial court determined that Fibreglass was entitled to share in the condemnation proceeds to the extent of the value of the primary term of its lease, but was not entitled to compensation for the three renewal options.

In June 1987, a commission appointed by the court determined that the total amount of compensation due for the entire fee was $2,265,600. Subsequently, following a hearing to apportion the award between Fibreglass and Kylberg, the trial court found that the value of the remaining eight months of the primary term of the lease was $24,000 and ruled that Fibreglass was entitled to that amount.

## I.

Kylberg contends that the trial court erred in refusing to interpret the lease to read that the lease terminated on the date title vested in Edgewater and that, thus, Fibreglass had no further interest in the property upon which to base a claim. We agree.

■ Both parties agreed at trial that the language of paragraph 10.1 was not ambiguous, but urged different interpretations. Nevertheless, the trial court found that the language was "not clear and unambiguous." We conclude, as a matter of law, that paragraph 10.1 of the lease agreement

is not ambiguous. *See Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984).

A court must enforce an unambiguous contract in accordance with its terms and without reference to extrinsic evidence. *Griffin v. United Bank*, 198 Colo. 239, 599 P.2d 866 (1979). Although the record reflects that the parties discussed the effects of condemnation, they ultimately expressly adopted the terms of the lease before us, and the issue thus presented is the legal effect of the language of paragraph 10.1.

■ The parties do not dispute that generally, upon a taking by condemnation, a lessee is entitled to share in the condemnation award to the extent of his leasehold interest, *Montgomery Ward & Co. v. City of Sterling*, 185 Colo. 238, 523 P.2d 465 (1974), or that the lessee may agree to waive that right. *See Direct Mail Services v. State of Colorado*, 557 F.Supp. 851 (D.Colo.1983); *Leach v. LaGuardia*, 163 Colo. 225, 429 P.2d 623 (1967); 2 J. Sackman, *Nichols on Eminent Domain* § 5.06 (1985).

■ If the lease provides for termination upon notice and the right is exercised so that lease rights are terminated before condemnation occurs, then the lessee has no compensable interest upon condemnation. *See Leach, supra.*

Although there is some authority to the contrary, we are persuaded by those courts which have interpreted clauses such as the present one and have held that the lessee has no right to share in the proceeds upon condemnation. *See R & R Welding Supply Co. v. City of Des Moines*, 256 Iowa 973, 129 N.W.2d 666 (1964) ("lease shall terminate"); *City of Rochester v. Northwestern Bell Telephone Co.*, 431 N.W.2d 874 (Minn.App.1988) ("lease shall terminate and expire"); 2 J. Sackman, *Nichols on Eminent Domain* § 5.06[2] (1985); *contra Maxey v. Redevelopment Authority of Racine*, 94 Wis.2d 375, 288 N.W.2d 794 (1980); *Beaverton Urban Renewal Agency v. Koning*, 53 Or.App. 842, 632 P.2d 1359 (1981). Thus, if a lease contains a provision for termination upon condemnation,

the lessee has, in effect, bargained away his rights by failing to include provisions for sharing in the condemnation proceeds. Here, there is no language which either expressly or impliedly manifests that the parties intended that Fibreglass participate in the condemnation award.

We conclude that under the terms of this agreement, upon condemnation, Fibreglass had no further compensable interest upon which to base a claim and that Fibreglass is not entitled to share in any of the condemnation proceeds.

## II.

Although § 38-7-104, C.R.S. (1982 Repl. Vol. 16A) provides that all parties interested in the property sought to be acquired shall be required to consent and agree to withdrawal of the $620,000 which remains on deposit in the registry of the court, and Fibreglass expressly objected to the proposed withdrawal, under our disposition of this matter, Kylberg is authorized to withdraw the remaining funds.

## III.

■ We conclude, as a matter of law, that Fibreglass' claim was not frivolous or groundless. However, we agree with Kylberg that the lease does compel an award consistent with its terms.

The lease states, in pertinent part:

"Tenant shall pay, and indemnify Landlord against, all legal costs and charges, including attorneys' fees and expenses, lawfully and reasonably incurred ... in enforcing any covenant or agreement of Tenant contained in this Lease Agreement."

Here, the claim concerned litigation to construe and enforce contractual obligations. Therefore, Kylberg is entitled to an award of attorney fees and costs under this provision.

In view of the foregoing, we do not address the parties' remaining contentions.

The trial court's judgment that Fibreglass was entitled to participate in any of the condemnation proceeds is reversed, and the cause is remanded for determination of attorney fees and costs consistent with this opinion.

PIERCE and HUME, JJ., concur.